U.S. DISTRICT COURT – N.D. OF N.Y.
FILED
Oct 18 - 2021
John M. Domurad, Clerk

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**MELISSA R.,**

**Plaintiff,**

**v.** **5:20-CV-1068 (FJS)**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

---

**APPEARANCES** **OF COUNSEL**

**OLINSKY LAW GROUP** **HOWARD D. OLINSKY, ESQ.**
250 South Clinton Street
Suite 210
Syracuse, New York 13202
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION** **MICHAEL L. HENRY, SAUSA**
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for Defendant

**SCULLIN, Senior Judge**

# MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff Melissa R. brought this action pursuant to the Social Security Act, 42 U.S.C. § 405(g) (the "Act"), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"), denying her application for benefits. *See generally* Dkt. Nos. 1, 13. Pending before the Court are the parties' cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 13, 14.

## II. PROCEDURAL HISTORY AND BACKGROUND

Prior to filing her current claim, Plaintiff claimed Title II benefits on June 18, 2015, with an alleged onset date of June 18, 2015. *See* Dkt. No. 10, Administrative Record ("AR"), at 80-89.[1] Administrative Law Judge ("ALJ") Kenneth Theurer denied Plaintiff's prior claim on November 7, 2017. *See id.* Plaintiff did not appeal that decision. *See* Dkt. No. 14 at 9. Attorney Marianne Brown represented Plaintiff with respect to her prior claim. *See* AR at 80.

Plaintiff brought her current claim for Disability Insurance benefits on November 27, 2017, alleging disability as of June 18, 2015. *See id.* at 203. Plaintiff filed a timely request for a hearing on March 13, 2018. *See* AR, Ex. B4B, at 143. An in-person hearing was held on June 25, 2019, before ALJ Jennifer Smith. *See* AR at 46-76. Plaintiff's attorney, Mr. Paul Shanahan from the Shanahan Law Office, represented her at the hearing, and a vocational expert, Mr. Joseph Atkinson, testified. *See id.* at 48. During the hearing and on the advice of counsel, Plaintiff amended her alleged onset date to November 8, 2017. *See id.* at 62, 80-89.

On July 1, 2019, ALJ Smith issued a written decision in which she made the following findings "[a]fter careful consideration of the entire record…"

1) Plaintiff "last met the insured status requirements of the Social Security Act through June 30, 2019."

2) Plaintiff "has not engaged in substantial gainful activity since November 8, 2017, the amended alleged onset date."

3) Plaintiff "has the following severe impairments: spondylosis and degenerative disc disease of the lumbar spine, mild cervical spondylosis, obesity, headaches, degenerative changes in the right wrist, left wrist pain, irritable bowel syndrome, urinary incontinence, depressive disorder, anxiety disorder, post-traumatic stress disorder, and history of vertigo."

---

[1] All references to page numbers of documents in the record are to the page numbers that the Court's ECF system generates, which appear in the top right corner of those pages.

4) Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404 Subpart P, Appendix 1."

5) Plaintiff "has the residual functional capacity to perform light work with the following limitations: [Plaintiff] should not climb ladders, ropes and scaffolds, kneel, crouch, and crawl; [Plaintiff] can occasionally climb ramps and stairs, balance, and stoop; [Plaintiff] can frequently reach, handle, finger, and feel; [Plaintiff] can occasionally push and pull with her right arm; [Plaintiff] should not work at unprotected heights or work in close proximity to dangerous machinery or moving mechanical parts of equipment; [Plaintiff] can tolerate no more than moderate levels of noise as defined in Appendix D of the Selected Characteristics of Occupations, 1993 Edition; [Plaintiff] should avoid work outdoors in bright sunshine and work with bright or flickering lights, such as one would experience welding or cutting metals; [Plaintiff] requires ready access to a bathroom; [Plaintiff] should be able to go to the bathroom at will up to three times a day; each bathroom break should be no longer than five minutes; [Plaintiff] should work at simple, routine, and repetitive tasks; [Plaintiff] should work in a low-stress job, defined as occasional decision-making, occasional judgment required, and occasional changes in the work setting; [Plaintiff] should work at goal-oriented work, rather than production-pace rate work; and [Plaintiff] should have occasional contact with co-workers, supervisors, and the public."

6) Plaintiff "is unable to perform any past relevant work."

7) Plaintiff "was born on November 15, 1978 and was 38 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date."

8) Plaintiff "has at least a high school education and is able to communicate in English."

9) "Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills."

10) "Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."

11) Plaintiff "has not been under a disability, as defined in the Social Security Act, from November 8, 2017 through the date of this decision."

*See* AR at 17-33 (citations omitted).

ALJ Smith's decision became the Commissioner's final decision on July 7, 2020, when the Appeals Council of the Social Security Administration denied Plaintiff's request for review. *See* AR at 6. Plaintiff then commenced this action on September 9, 2020, filing a supporting brief on April 23, 2021. *See* Dkt. Nos. 1, 13. Defendant filed a response brief on June 1, 2021. *See* Dkt. No. 14. In support of her motion, Plaintiff argues that ALJ Smith's residual functional capacity ("RFC") determination is unsupported by substantial evidence because she failed to properly address certain medical opinions, including those by Jacqueline Barkley, P.A., and R. Reynolds, M.D. *See generally* Dkt. No. 13 at 3, 10-13.

## III. DISCUSSION

### A. Standard of review

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). Accordingly, a reviewing court "'may not substitute [its] own judgment for that of the [Commissioner], even if [it] might justifiably have reached a different result upon a de novo review.'" *Cohen v. Comm'r of Soc. Sec.*, 643 F. App'x 51, 52 (2d Cir. 2016) (Summary Order) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)). In other words, "[t]he substantial evidence standard means once an ALJ finds facts, [a reviewing court may] reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (quotation and other citation omitted).

To be eligible for benefits, a claimant must show that she suffers from a disability within the meaning of the Act. The Act defines "disability" as an inability "to engage in any substantial gainful activity [("SGA")] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

1) The ALJ first determines whether the claimant is currently engaged in SGA. *See* C.F.R. §§ 416.920(b), 416.972. If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(b).

2) If the claimant is not engaged in SGA, the ALJ determines if the claimant has a severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *See id.*

3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the appendix to the regulations (the "Listings"). If so, the claimant is disabled. *See* 20 C.F.R. § 416.920(d).

4) If the impairment does not meet the requirements of the Listings, the ALJ determines if the claimant can do her past relevant work. *See* 20 C.F.R. § 416.920(e), (f). If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(f).

5) If the claimant cannot perform her past relevant work, the ALJ determines if she can perform other work, in light of her RFC, age, education, and experience. *See* 20 C.F.R. § 416.920(f), (g). If so, then she is not disabled. *See* 20 C.F.R. § 416.920(g). A claimant is only entitled to receive benefits if she cannot perform any alternative gainful activity. *See id.*

For this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step if the analysis proceeds that far. *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (citation omitted).

**B. ALJ Smith's treatment of P.A. Barkley's opinion**

Plaintiff contends that ALJ Smith failed to provide a legally sufficient reason as to why she disregarded P.A. Barkley's opinion. *See* Dkt. No. 13 at 10-12. Specifically, Plaintiff asserts that ALJ Smith did not explain why P.A. Barkley's opinion was not probative for the period at issue, even though there was no evidence that Plaintiff's condition changed from the time when P.A. Barkley authored her opinion until the relevant period. *See id.* at 12.

In P.A. Barkley's opinion, dated November 10, 2016, she asserted that Plaintiff could occasionally lift and carry up to ten pounds, could sit and stand for fewer than thirty minutes at a time without interruption, and could walk for fifteen minutes at a time without interruption. *See* AR at 1139-1140. She also indicated that Plaintiff would need to change positions frequently throughout the day, but Plaintiff could occasionally reach, handle, finger, and feel with both her right and left hands, and she could frequently operate foot controls with her right and left feet. *See id.* at 1140-1141. Among other things, P.A. Barkley also found that Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces, but she found that Plaintiff was able to perform activities like shopping, could ambulate without assistance, could use public transportation, climb a few steps, prepare meals, feed herself, handle personal hygiene, and manage papers and files. *See id.* at 1144. Finally, P.A. Barkley indicated that Plaintiff suffered from generalized anxiety disorder and major depressive disorder, which impacted her ability to get and maintain sustainable employment. *See id.* P.A. Barkley relied on Plaintiff's October 8, 2015 MRI results when coming to these conclusions. *See id.*

In her decision, ALJ Smith expressly found that P.A. Barkley's opinion was "unpersuasive"; and, "[i]n light of [Plaintiff's] election to amend her alleged disability onset date to November 8, 2017, . . . the November 10, 2016 [opinion] by Physician's Assistant Barkley regarding the

physical ability of [Plaintiff] to perform work-related activities has little probative value for the period at issue." *See* AR at 29. The caselaw in this Circuit supports the ALJ's finding, as courts have routinely held that "'[m]edical evidence that predates the alleged disability onset date is ordinarily not relevant to evaluating a claimant's disability.'" *Moore v. Comm'r of Soc. Sec.*, No. 1:16-CV-270 (DJS), 2017 WL 1323460, *9 (N.D.N.Y. Apr. 10, 2017) (quoting *Velez v. Colvin*, [No. 3:13-CV-171], 2016 WL 884635, at *5 (D. Conn. Mar. 8, 2016) (quoting *Carway v. Colvin*, 2014 WL 1998238, at *5 (S.D.N.Y. May 14, 2014))) (other citation omitted); *accord Delila B. v. Comm'r of Soc. Sec.*, No. 1:19-CV-797 (FJS), 2020 WL 2079430, *4 (N.D.N.Y. Apr. 30, 2020). Additionally, "[a]lthough it is within an ALJ's purview to consider pre-onset date evidence, it is not required." *James N. v. Comm'r of Soc. Sec.*, No. 3:18-CV-1324 (CFH), 2020 WL 1140498, *5 (N.D.N.Y. Mar. 6, 2020) (citations omitted). Since P.A. Barkley's opinion was offered in November 2016, and Plaintiff's amended onset date was in November 2017, the ALJ was not required to consider it.

Furthermore, "[t]his Court may not re-adjudicate a period of time that has already been adjudicated to finality, and if the Agency found that [certain] evidence . . . did not support a finding of disability and the ALJ adjudicating the current application found no grounds to reopen the prior application, this Court is bound by those findings and may not now reevaluate that same evidence in search of a different conclusion." *LaFave v. Comm'r of Soc. Sec.*, No. 7:16-CV-621 (GTS), 2017 WL 4011264, *9 (N.D.N.Y. Sept. 11, 2017) (citations omitted). As Defendant indicates in its memorandum of law, ALJ Theurer expressly considered P.A. Barkley's opinion and rejected it when denying Plaintiff's prior claim for Disability Insurance benefits. *See* Dkt. No. 14 at 8-9; AR at 87. In the prior decision, ALJ Theurer gave P.A. Barkley's opinions "less weight" because she cited to Plaintiff's MRI report, which was

unchanged from a prior MRI when Plaintiff was working. *See* AR at 87. Additionally, ALJ Theurer noted that P.A. Barkley's opinion was not consistent with records that indicated that Plaintiff had normal muscle strength and tone, a negative straight leg raise test bilaterally, and a normal gait and station. *See id.* ALJ Theurer also concluded that P.A. Barkley did not have the "professional expertise" of other medical professionals, including a physician on whose opinion the ALJ relied. *See id.* ALJ Smith saw no reason to reopen Plaintiff's prior claim and reconsider this evidence, and it is not the Court's place to reevaluate P.A. Barkley's opinion of Plaintiff's alleged disability. Therefore, the Court finds that ALJ Smith did not improperly discount P.A. Barkley's opinion when coming to her determinations.

**C. ALJ Smith's treatment of Dr. Reynolds' opinion**

Dr. Reynolds, a state agency physician, opined in February 2018 that Plaintiff could occasionally lift or carry twenty pounds, could frequently lift or carry ten pounds, could push or pull an unlimited amount, and could sit, stand, or walk with normal breaks for a total of six hours in an eight-hour workday. *See* AR at 106. Dr. Reynolds indicated that Plaintiff should avoid heights, hazards, and excessive noise due to migraines and problems with her balance. *See id.* at 107. The doctor also found that Plaintiff should have "occasional limits" with fine fingering and manipulation in her right hand. *See id.*

ALJ Smith found Dr. Reynolds' opinion "somewhat persuasive," concluding that there was support for each of his assertions regarding Plaintiff's ability to lift, carry, stand, walk, sit, reach, handle, feel, and that she should avoid concentrated exposure to noise and hazards such as machinery and heights. *See id.* at 28. ALJ Smith concluded that these assertions were consistent with Plaintiff's ability to perform light exertional work with some environmental limitations. *See id.* Nevertheless, ALJ Smith found that Dr. Reynolds' determination that

Plaintiff was limited to occasional fingering with her right hand was unpersuasive because it was inconsistent with the medical evidence of record. *See id.* ALJ Smith indicated that a consultative internal medicine exam revealed that Plaintiff only had mild limitations for handling small objects with the right hand, and Plaintiff's June 2018 electromyography and nerve conduction velocity studies of her upper extremities were normal. *See id.* ALJ Smith further concluded that Dr. Reynolds' finding with respect to Plaintiff's fingering was inconsistent with her orthopedist's August 2018 assessment that Plaintiff exhibited a full range of motion in her bilateral shoulders, elbows, wrists, and hands, and his April 2019 opinion that there were not any medical findings to support Plaintiff's symptoms in her right wrist and hand. *See id.* at 28-29.

Plaintiff argues that ALJ Smith did not properly address Dr. Reynolds' opinion when she found that it was only "somewhat persuasive" and dismissed his recommended fingering limitations. *See* Dkt. No. 13 at 13-15. According to Plaintiff, in coming to this conclusion, ALJ Smith improperly supplanted her own lay opinion in place of Dr. Reynolds' medical source opinion. *See id.* at 13. Plaintiff further asserts that ALJ Smith provided an insufficient explanation as to why she disregarded his opinion about Plaintiff's fingering limitations. *See id.* at 14.

"[T]here is no requirement that the ALJ accept every limitation in an opinion where portions of that opinion are not supported by the evidence." *Crumedy v. Comm'r of Soc. Sec.*, No. 1:16-CV-1261 (GTS), 2017 WL 4480184, *5 (N.D.N.Y. Oct. 6, 2017) (citations omitted). In this case, ALJ Smith looked at the record as a whole and found that all but one of Dr. Reynolds' many assertions was consistent with other evidence. With respect to Dr. Reynolds' opinion about Plaintiff's ability to finger, she specified that Daniel J. Murphy, M.D., Plaintiff's

orthopedist, conducted electrodiagnostic studies following Plaintiff's complaint of numbness in her hand, and the results of these studies were normal. *See* AR at 502. Additionally, Dr. Murphy noted in August 2018 that Plaintiff had full motion in her shoulder, elbow, wrist, and hand, had stability in her wrist and digits, and had equal grip in both hands. *See id.* Dr. Murphy indicated that the negative electrodiagnostic studies exams were "consistent with wrist and digital flexor tendinitis" and explained to Plaintiff that treatment included splint support and over-the-counter pain medications. *See id.* Dr. Murphy's conclusions were consistent with those of James Riccelli, P.T., who also determined that Plaintiff's electrodiagnostic results were normal. *See id.* at 504. ALJ Smith articulated these findings in her decision. *See id.* at 28-29. Thus, because the evidence does not support additional restrictions with respect to Plaintiff's hand and finger usage, the Court finds that the ALJ did not err in discounting Dr. Reynolds' opinion to that effect.

Accordingly, the Court holds that there was substantial evidence in the record to support ALJ Smith's RFC determination and that she properly addressed P.A. Barkley's and Dr. Reynolds' opinions in coming to that decision.

## IV. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings, *see* Dkt. No. 13, is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings, *see* Dkt. No. 14, is **GRANTED**; and the Court further

**ORDERS** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: October 18, 2021
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge